# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF FLORIDA

## "*FIFTH* AMENDED"

## CIVIL RIGHTS COMPLAINT FORM FOR
## PRO SE, PRISONER LITIGANTS IN ACTIONS UNDER
## 28 U.S.C. § 1331 or § 1346 or 42 U.S.C. § 1983

AARON C. PORTER ,

Inmate ID Number: L37704 

_____

*(Write the full name and inmate ID*
*number of the Plaintiff.)*

**Case No.:** 4:19-cv-00126-WS-MAF

**v.**

MARK S. INCH, ET AL ,

_____ ,

_____ ,

*(Write the full name of each*
*Defendant who is being sued. If the*
*names of all the Defendants cannot*
*fit in the space above, please write*
*"see attached" in the space and*
*attach an additional page with the*
*full list of names. Do not include*
*addresses here.)*

**Jury Trial Requested?**
☑ **YES**  ☐ **NO**

PROVIDED TO
SANTA ROSA C.I. ON

AUG 1 9 2029

FOR MAILING

FILED USDC FLND TL
SEP 21 '20 PM 5:14

## I. PLAINTIFF:

State your full name, inmate number (if applicable), and full mailing address in the lines below:

Name of Plaintiff: AARON C. PORTER

Inmate number: L33704

Prison or Jail: Prison

Mailing address: Wakulla Correctional Inst.- Annex

110 Melaleuca Drive

Crawfordville, Fl. 32327

## II. DEFENDANT(S):

State the name of the Defendant in the first line, official position in the second line, place of employment in the third line, and mailing address. Do the same for **every** Defendant:

(1) Defendant's name: Mark S. Inch

Official Position: Secretary of FDOC

Employed at: Florida Department of Corrections

501 South Calhoun Street

Tallahassee, Florida 32349

Sued in His Official Capacity and Individual Capacity

(2) Defendant's name: Z. Culpepper

Official Position: Secretary of FDOC

Employed at: Florida Department of Corrections

501 South Calhoun Street

Tallahassee, Florida 32349

Sued in His Official Capacity and Individual Capacity

(3) Defendant's name: M. Workman

Official Position: Chairperson of State Classification Office



Employed at: Florida Department of Corrections

501 South Calhoun Street

Tallahassee, Florida 32349

Sued in His Official Capacity and Individual Capacity

(4) Defendant's name: Y. Holms

Official Position: Vice-Chairperson (SCO)

Employed at: Florida Department of Corrections

501 South Calhoun Street

Tallahassee, Florida 32349

Sued in Her Official Capacity and Individual Capacity

(5) Defendant's name: C. Russell

Official Position: Columbia C.I. State Classification Officer

Employed at: Florida Department of Corrections

501 South Calhoun Street

Tallahassee, Florida 32349 and/or

Columbia Correction Institution

253 S.E. Corrections Way

Lake City, Fl. 32025

Sued in her Official Capacity and Individual Capacity

## III. EXHAUSTION OF ADMINISTRATIVE REMEDIES

Exhaustion of administrative remedies is required prior to pursuing a civil rights action regarding conditions or events in any prison, jail, or detention center. 42 U.S.C. § 1997e (a). Plaintiff is warned that any claims for which the administrative grievance process was not completed prior to filing this lawsuit may be subject to dismissal.

## IV. PREVIOUS LAWSUITS

NOTE: FAILURE TO DISCLOSE **ALL** PRIOR CIVIL CASES MAY RESULT
IN THE DISMISSAL OF THIS CASE. IF YOU ARE UNSURE OF ANY PRIOR
CASES YOU HAVE FILED, THAT FACT MUST BE DISCLOSED AS WELL.

A. Have you initiated other actions in **state court** dealing with the same or
similar facts/issues in this action?

Yes ( )          No (✓)

1. Parties to previous action:

(a) Plaintiff(s): _____

(b) Defendant(s): _____

2. Name of judge: _____ Case No: _____

3. County and judicial circuit: _____

4. Approximate filing date: _____

5. If not still pending, date of dismissal: _____

6. Reason for dismissal: _____

7. Facts and claims or case: _____

B. Have you initiated other actions in **federal court** dealing with the same
or similar facts/issues in this action?

Yes (✓)          No ( )

1. Parties to previous action:

(a) Plaintiff(s): _AARON C. PORTER_          _3:19CV-327-BJO-JRK_

(b) Defendant(s): _MARK INCH, ET AL._          _4:20CV-230-MW-HTC_

          _4:20CV-233-AW-MAF_

2. Name of judge: _____ Case No: _5:20CV-138-TKW-MJF_

3. County and judicial circuit: _FEDERAL N.O. FLORIDA TALLAHASSEE / M.O. OF FLORIDA_

4. Approximate filing date: _3/18/19  4/28/20  4/28/20  AND  5/01/20_

5. If not still pending, date of dismissal: _YES, PENDING (ALL)_

6. Reason for dismissal: _PENDING (ALL)_

7. Facts and claims of case: _SSS PRISON CONDICTION_

4.

C. Have you initiated other actions (besides those listed above in Questions (A) and (B) in **either state or federal court** that relate to the act or manner of your incarceration (including habeas corpus petitions) or the conditions of your confinement (including civil rights complaints about any aspect of prison life, whether it be general circumstances or a particular episode, and whether it involved excessive force or some other wrong?)

Yes (✓)          No ( )

If YES, describe each action in the space provided below. If more than one action, describe all additional cases on a separate piece of paper, using the same format as below.

1. Parties to previous action:

(a) Plaintiff(s): See Continuance Pages:

(b) Defendant(s):_____

2. Name of judge: _____ Case No.: _____

3. County and judicial circuit: _____

4. Approximate filing date: _____

5. If not still pending, date of dismissal: _____

6. Reason for dismissal: _____

7. Facts and claims of case: _____

**(Attach additional pages as necessary to list cases.)**

D. Have you ever had any actions in <u>Federal Court</u> dismissed as frivolous, malicious, failing to state a claim, or prior to service? If so, identify and every case so dismissed:

Yes (✓)          No ( )

If YES, describe each action in the space provided below. If more than one action, describe all additional cases on a separate piece of paper, using the same format as below.

5.

1. Parties to previous action:

   (a) Plaintiff(s): See Continuance Pages:

   (b) Defendant(s):_____

2. Name of judge: _____ Case No.: _____

3. County and judicial circuit: _____

4. Approximate filing date: _____

5. If not still pending, date of dismissal: _____

6. Reason for dismissal: _____

7. Facts and claims of case: _____

8. Facts and claims of case.  N/A

## CONTINUATION OR ATTACHMENT OF:

## IV. PREVIOUS LAWSUITS: C

The Plaintiff has initiated at least (16) State Court Cases, some relating to his (Criminal Conviction) and several mandamus that was consolidated five cases into one:

1. Three (3) in Hillsborough County: Case Nos.: 2017-CA-1950, 2017-CA-320:

2. One (1) in Okeechobee County: Case No.: 2017-CA-15 (relating to criminal case.)

3. Ten (10) in Leon County, all of the "2012" cases were consolidated as one case as follows: Case No(s): 2012 –CA-3473; 2012 –CA-3472; 2012-CA-3471; 2012-CA-3469 and 2012-CA-3468. All these cases are one case. Case No.: 2013-SC-2198; 204-SC-1773; 2015-Appellant-11; 2016-SC-687 and 2016-CA-2862.

4. One (1) Broward County Case NO.: 2014-SC-23567.

5. One (1) Taylor County Case No.: 2016-SC-73.

6. One (1) Santa Rosa County Case No.: 2012-SC-1242.

7. One (1) Sumter County Case No.: 19-SC- 182. (Pending, filed 3/21/19)

8. One (1) Marion County Case No.: 19-1277-SC. (Pending, filed 3/11/19)

NOTE: The Plaintiff is not sure if the Court wish for him to list all of his Appellate cases in the 2nd DCA relating to his criminal conviction, but there at least (10) such cases, in addition to (1) civil appeal, Case No.: 2D17-2500.

## CONTINUATION OR ATTACHMENT OF: (D)

## IV. PREVIOUS LAWSUITS:

The Plaintiff has had several actions in federal court that was dismissed without prejudice, frivolous or as failing to state a claim as follows:

1. Porter v. Broward Co. Sherriff's Office, et. al.

02-6063-CIV-ZLOCH

Dismissed: 9/13/2002: § 1915

2. Porter v. Darry Mitchell, et. al.

03-60920-CIV-Marra

Dismissed: 7/8/2002. § 1915(g)

3. Porter v. Broward Co. Sherriff's Office, et. al.

O3-60932-CIV- Gold

4. Porter v. Judge Imperata, et. al.

3-61128-CIV-Marra

Dismissed: 7/8/2003 § 1915(g)

5. Porter v. Broward Co. Sherriff's Office, et. al.

03-61191-CIV-Altonatia

6. Porter v. Broward Co. Sherriff's Office, et. al.

03-61351-CIV-Jordan

Dismissed: 8/4/2003

7. Porter v. Broward Co. Sherriff's Office, et. al.

03-613252-CIV-Gold

Dismissed: 2/11/2004: § 1915(g)

8. Porter v. Jones, et. al.

1:15 CV12-MW/GRD

Dismissed: 2/17/2016, <u>without prejudice</u>: Abuse of Jud. Process.

## V. STATEMENT OF THE FACTS:

State briefly the FACTS of this case. Describe how each Defendant was involved and what each person did or did not do which gives rise to your claim, in describing what happened, state the names of persons involved, dates, and places. <u>Do not make any legal arguments or cite to any cases or statutes</u>. You must set forth separate factual allegations in separately numbered paragraphs. You may make copies of this page if necessary to supply all the facts. Barring extraordinary circumstances, no more than five (5) additional pages should be attached. **(If there are facts which are not related to this same basic incident or issue, they must be addressed in separate civil rights complaint.)**

1.) The Plaintiff further in good faith, certifies that he is a "three-strike" filer. However, meets the expectation based on the specific facts in this complaint and the active ongoing episodic, serial and serious physical injury, and pattern of misconduct, the sexual abuse, batteries, assaults, failure to protect, and deliberate indifference, evidencing a likelihood of imminent danger of physical injury, or death.

2.) The Plaintiff is currently a prisoner in the care, custody and control of the Defendants herein acting under the color of State Law, Florida Department of Corrections. The Plaintiff is currently serving a life sentence for armed robbery, having been sentenced in 2010, and has been in FDOC since.

3.) Relevant to this action, the inmate classification is comprised of two primary operational components which have been established to provide uniformity and consistency in both the department developing and implementation of classification policies and procedures. (It is noted, the "ICT" Defendants are the first components, and the "SCO" Central Office Defendants is the second.)

8

4.) These two components are the State Classification Office and components have [specific authority] and [responsibility] relative to the operation and management of the inmate classification.

5.) By policy, the State Classification Office shall be composed of a chairperson, a vice-chairperson and other members as designed by the chief of classification and central records. The State Classification Office (SCO) refers to a staff member at the central office level who is [responsible] for the [review] of inmate [classification decisions] duties include [approving] or [reject]ing the Institutional Classification Team (ICT) recommendations.

6.) The Institutional Classification Team refers to the team consisting of the Warden or Assistant Warden, Classification Supervisor, a Correctional Officer Chief, and other members as necessary when appointed by the Warden or designated by 'rule, the ICT is [responsible] for making work, program, [housing] and [inmate status decisions] at a facility and making [other] [recommendations] to the State Classification Office (SCO).

7.) Between May and June of 2015, while at Taylor C.I., Plaintiff was aggravated battered by several gang members by being stabbed in the face. The Plaintiff had been labeled a "snitch," "the police," as it was said he assisted the gang (Security Threat Group) (STG) sergeant at Taylor C.I. The Institutional Classification Team (ICT) recommended a "resolved protection" transfer, and the State Classification Office (SCO) "approved" the transfer. The Plaintiff did need, and received medical attention.

8.) The Florida Department of Corrections has a history of its members and officials bring in and selling to prisoners, contraband, drugs, and specifically, cell-phones. As a direct result, Plaintiff is located and harmed.

9.) The Defendants (SCO) Workman and Holms, had the Plaintiff transferred to another handpicked, gang infested institution and staff, abuse, Gulf Correctional

Institution. Because of Defendants Inch, Workman, Holms (among others) actions/inactions and deliberate indifference, in November and December 2015, (through cell phone contact from inmate gang members from one institution to another) a "hit" was placed on the Plaintiff. While at Gulf C.I., the Plaintiff was beat by several inmates, sexually battered at knife point by his cellmate Ferride Burch, setup with a knife, and abused by Staff members. The Plaintiff was labeled a "snitch" by officers. The ICT ¹_____ Ponder and Brown was on notice of abuse and that Plaintiff had arrived there from Taylor C.I., as a victim of a stabbing by gang members. Despite this, ~~ICT,~~ Ponder and Brown, simply rejected request for a protection unit, and recommended a mere "resolved protection" transfer to another hand pick institution. The Plaintiff specifically requested a protection unit advised ~~ICT,~~ Ponder and Brown he could encounter the people again, the chairman, Ponder, responded, "Well you can check in again." The Defendants SCO, Workman and Holms despite their notice of obvious harm that would follow, approved the ICT recommendations.

10.) As a result of Defendants Workman and Holms actions or inaction coupled with Defendant Inch unwritten policy or custom. In January of 2016, within weeks of arriving at Jackson Correctional Institution another gang infested institution, Plaintiff was intentionally housed with a gang member. Word followed to Jackson C.I. and while in confinement, the orderly, (a gang member) passed a weapon and a note to Plaintiff's cellmate instructing him to harm the Plaintiff. In this case, Plaintiff intercepted the note and, turned it in to the confinement staff. This attempted assault resulted in Plaintiff's request for (Fourth) protection request. Despite notice of a pattern of ongoing acts and Plaintiff request specifically for protection unit, *THE* ICT merely recommended a "resolved protection" transfer. The Defendants SCO Workman and Holms in deliberate indifference, and failing to protect, these Defendants merely approved another harmful transfer.

10

11.) The Plaintiff was transferred at <u>Calhoun C.I.</u> and on or about <u>April and May</u> of 2016, the Plaintiff was located and a "hit" was in the making. There was a gang member who was allowed access to personal information and advised the Plaintiff his time was numbered. The matter was reported to <u>Assist. Warden M. Neal</u> and a request for protection was made.

An inmate law clerk who was also a gang member, advised the Plaintiff he was going to "stab" him once Plaintiff was released from confinement. This was reported to the <u>Assist. Warden M. Neal</u>. In <u>July of 2016</u> while Plaintiff was housed alone in confinement, and pending a protection review by ICT, he was given a cellmate named, Robert Johnson, (Known later to be a sex offender). This inmate disclosed to Plaintiff he was ordered to do a "hit" (kill) on Plaintiff, by the Bloods. The Plaintiff notified staff, he and Johnson provided statements. Despite this, Plaintiff still notified staff he was in fear of housing with Johnson, as Johnson had been sexually harassing and assaulting him. Despite this, Johnson and Plaintiff were kept housed together.

12.) On <u>July 26, 2016</u>, the ICT held a protection hearing and was advised of the current (PREA) issues with Johnson. The ICT despite this had Plaintiff retuned back in cell with Johnson, but recommended a "resolved protection" transfer. For the Bloods, Johnson, in lieu of beating Plaintiff up, inmate Johnson made Plaintiff perform oral sex on him. (<u>There is a separate federal action relating only to the sexual assault was filed in the Northern District, Panama City Division</u>.) The (SCO) merely adopted and approved the ICT recommendation to transfer the Plaintiff as a "resolved protection," which is just to another, general institution. In fact, the department treats victims as suspects and ships them to a worse institution. Despite notice of this being (sixth)    attack.

13.) The Plaintiff was transferred back to <u>Taylor C.I.</u> where he was stabbed just about (6) months before, see <u>Page # 7</u> Id. This was start of it all. The Plaintiff had

11

family contact the (SCO) and complain. Days later, the Plaintiff was transferred to Okeechobee C.I.

14.) That on <u>August 24, 2017</u>, the Plaintiff was transferred to, and arrived at said institution. The Plaintiff was at Okeechobee C.I. about a month or two before going to outside court in Hillsborough County for his post conviction proceedings. The Plaintiff was out for a year, and returned back to Okeechobee C.I. in November/December of 2017.

15.) In <u>April of 2018</u>, the Plaintiff was sexually assaulted by two inmates who possessed a weapon, the Plaintiff made a written report. Later, in April 30, 2018, as the Plaintiff was walking to dinner, three inmate gang members (based on a hit) stabbed Plaintiff several times in the head, back, and ear. The ICT held a protection hearing, as all the others had done, recommended a transfer but attempted to undermined the reason to transfer, the Plaintiff requested a protection unit and pointed out, this was his (6) transfer. The SCO approved a transfer but did not note it was a protection transfer, in reckless disregard of Plaintiff's safety, and denied him a protection unit.

16.) In <u>June of 2018</u>, the Plaintiff arrived at <u>Marion C.I.</u>, a gang infested institution. Within two weeks, it had been (10) stabbings or assaults. On <u>July 2018</u>, several gang members assaulted, and extorted, and took all of the Plaintiff's personal property. (There is a separate small claims case filed related to theft of property only, in Marion County). The ICT recommended a "resolved transfer" and the SCO, <u>Defendants Workman and Holmes</u> approved this despite notice of this being 7th attack in a general prison population.

17.) On <u>August 6, 2018</u> the Plaintiff was transferred to <u>Sumter C.I.</u> (Marion's sister institution). Within (1) week, specifically on August 13, 2018, the Plaintiff was assaulted at knife point by several gang members, who stole Plaintiff's property, and destroyed a bag of 3000 pages of active legal documents. (A separate small

claims case filed in conjunction with this case, dealing with property, in Sumter County). Knowing that all the Defendant's would do is merely transfer him and title it a "resolved protection." The Plaintiff requested release from confinement, and was released.

18.) On <u>September 12, 2018</u>, gang members attempted to extort Plaintiff, and knowing that Plaintiff made a report of witnessing gang members with appeared to be bullets on the compound. The Plaintiff received (8) "resolved protection" transfer recommended by ICT, and approved by the (SCO), <u>Defendants Workman and Holms,</u> but denying a protection unit.

19.) That on <u>November 28, 2018</u>, the Defendants <u>SCO Workman and Holms</u> had Plaintiff transferred to <u>Madison C.I.</u> and he arrived on this date. On arriving at <u>Madison C.I.</u>, the Plaintiff was placed in dorm G-2 known y the inmate population and staff as, "Gangland." 90% of the dorm is a gang member. Everyone make, possess and sales homemade knives.

20.) On the very next day, <u>November 29, 2018</u>, as the Plaintiff proceeded outside of G-dorm, he was attacked by gang members and battered in the head with locks. As this is going on, another inmate, <u>Leonard, Tyrone</u>, is stabbed in his neck and airlifted to outside medical. The Plaintiff received medical attention, (belatedly) and his injury was noted. The Plaintiff investigated and learned that inmate Leonard has been attacked at Columbia C.I. (to which Plaintiff is) and received a "resolved protection" transfer, arriving to Madison C.I. where we both were attacked the same day, by same people, at same time, and both Plaintiff and Leonard was assigned together in G-2, known as "Gangland." It is also important to note, the same ICT members <u>Beardon, Anderson, Cox</u> and SCO Defendants <u>Workman and Holms</u>, who held Plaintiff's protection hearing, also held Mr. Leonard's hearing. Mr. Leonard received an actual protection unit transfer while Plaintiff was treated unfavorable, and received his (8th) worthless "resolved

protection" transfer. This unequal treatment is to say, Plaintiff must wait until he is almost killed before provided protection will be afforded.

21.) The ICT <u>Beardon</u>, <u>Anderson</u>, and <u>Cox</u> at Madison C.I. on January 11, 2019 as approved by SCO Defendants <u>Holms</u>, <u>Workman</u> and <u>Inch</u> had Plaintiff transferred to one of the most dangerous institutions in the State of Florida, with the most deaths, stabbings, contraband, gangs, and official corruption.....Columbia C.I. and called this a "resolved protection."

22.) The Plaintiff arrived at Columbia Correctional Institution Annex on January 11, 2019, and was housed in T-Dormitory intentionally, with an inmate "<u>Jeremiah Knight</u>," a very violent inmate who has stabbed a Correctional Captain, killed inmates and otherwise harmed several prisoners. Additionally inmate Knight is a part of the same gang who has a "hit" on Plaintiff (the Bloods) and is the same gang who has continually tracked and harmed Plaintiff. Mr. Knight was allowed access to his own cell phone, knife, drugs, and was allowed to control T-dorm and was in a sexual relationship with a Sgt. A. Johnson, who is over T-dorm.

23.) Mr. Knight with access to a cell phone from Sgt. Johnson, and Sgt. Labunt. Mr. Knight was able to obtain information from staff regarding Plaintiff's last transfer. With this information, Knight felt Plaintiff was a threat and a "snitch," labeled as by Sgt. Labunt and he formed a "hit" now upon Plaintiff to remove him from Columbia C.I.

24.) From January 11, 2019 –February 20, 2019, the Plaintiff was harassed, sexually assaulted at knife point, extorted by gang members, abused by staff among other things, and forced to request protection. <u>See</u>: Case No.: <u>3:19-CV-00327 –BJD-JRK,</u> filed 2019 in the U.S. District Court, Middle District of Florida, Porter v. Mark Inch, et. al., for further background in the Columbia C.I. violations.

25.) On February 20, 2019[1] the Plaintiff appeared before the "ICT" members Herring and Hester and Classification Supervisor for his protection review hearing. At the hearing, the Plaintiff pled his case and need for protection as demonstrated herein. These Defendants recommended a transfer out of the region as a resolved protection; the Defendant C. Russell from Central Office later returned the case to ICT members for "more information."

26.) Despite this, no one came to visit the Plaintiff for further information. On March 13, 2019, the ICT members Herring, Crawford, and Classification Supervisor reheard the case and Plaintiff advised of the obvious substantial risk of a mere "resolved protection transfer." Despite this, Defendants advised Plaintiff that he have provided reliable, confirmed evidence that resulted in several inmates and staff being placed under investigation for drugs, cell phones, among other misconduct, thus Plaintiff is labeled a "snitch". Despite this, all Defendants provided was a "resolved protection transfer" in the same region as Columbia. The Defendant C. Russell despite her note of obvious substantial risk of further harm or death, and her position to abate it, failed to do so, and approved the ICT inactions.

27.) On March 22, 2019, the Plaintiff was transferred as a "resolved protection" to Hamilton C.I. another gang infested Institution and placed in the dorm with 80% gang members, most of who is Bloods and who is targeting Plaintiff. The Defendants Inch, Russell, Workman, Holms, and CULPEPPER ARE LIABLE TO THE Plaintiff for their failure to protect and deliberate indifference to an obvious serious continuance, episodic serial substantial risk of further harm. By these Defendants actions/inactions, the Plaintiff is under imminent danger of serious physical injury or death at Hamilton C.I. and in the Florida Department of Corrections.

28.) The sham "resolved protection transfer" has not abated the obvious risk. First, Hamilton C.I. is gang infested; it is in the same region as Columbia C.I. Second,

---

[1] The first February 13, 2019 hearing was postponed because the investigator did not properly conduct investigation.

15

inmates from Columbia C.I. is sent to Hamilton C.I. weekly. Third, there has been four gang stabbings, one inmate death, just from the week Plaintiff arrived at Hamilton C.I. Fourth, upon arrival, staff advised Plaintiff "ain't no checking in here (request for protection), that will cost you" and " for you writ writers and grievance filers, we got some gang members for that." The Plaintiff has filed a complaint on this matter. It is a matter of time before Plaintiff is exposed and attacked by the active gang hit on him. Had Defendants acted reasonable, they would have approved Plaintiff for protection management, or a private institution. The Plaintiff is under imminent danger of serious physical harm at Hamilton C.I. and at time of this filing.

29.) The Defendants as a whole are liable in both their official and personal capacity. Defendants has handled many cases of need for protection, they were faced with several formal, informal and appeals with evidence that Plaintiff had been sexually abused (three) times, and otherwise stabbed (two) and assaulted (three) times prior to their Institution this was advised to them and was a matter of their own records. Despite this, Defendants intentionally in bad faith failed to make a recommendation for a protective unit. This action or inactions resulted in further attacks, and infliction of cruel and unusual punishment.

30.) The Defendant as a whole are likewise liable in both, their official and person capacity. Defendants have handled many cases of the need for protection. In fact, they had just handled the case of Inmate Tyrone Leonard, an inmate stabbed the same day, time, place, and by the same people. In all this, Plaintiff was treated differently, merely being recommended a "resolved protection" transfer, while inmate Leonard actually received a "protection unit transfer." The Defendants were armed with record evidence of a recent history of assault, battery, and sexual abuse, and this having being Plaintiff's (9th) "protection resolved transfer," prior to their institution. Despite this, Defendants intentionally, and in bad faith failed to

make an equal recommendation for an approved transfer to a protection unit. Their actions and or inactions resulted in further attacks, and infliction of cruel and unusual punishment.

31.) The Defendants <u>Inch,</u> Secretary of FDOC, his representatives, Defendants <u>Z. Culpepper, and the State Classification Office,</u> Defendants <u>M. Workman, Y. Holms,</u>                   and <u>C. Russell</u> are all liable in their personal and official capacity.

32.) These Defendants as the final approving authorities, despite their notice, have in bad faith, and intentionally, ten times merely approved and transferred Plaintiff on a sham "resolved protection transfer" to institutions they know to be gang infested and having the most violence, despite the documented history of hits on Plaintiff's life by gang members, and documented history of demonstrated attacks, and a record Plaintiff (ten) such transfers to merely another gang infested institution, where Plaintiff is located within weeks, and attacked again. Despite the fact that policy states that (SCO) at the Central Office level is responsible for the [review] of the inmate classification decisions. It is clear from the facts, the SCO did not "review" anything, had they, it would have been evident something is seriously wrong. Their duties included approving or rejecting or modifying the ICT recommendations. In each (10) cases, all the SCO done was "approved" the ICT action or inactions, and failed to place Plaintiff in a protective unit as enough is enough. The SCO's failure was a gross act of intentional bad faith, failure to protect, and deliberate indifference. Each time, the SCO went as far as to transfer Plaintiff to all gang infested institutions within the department, causing further, imminent danger of serious physical injury or death.

33.) The Defendants <u>Secretary of FDOC and its designated representatives,</u>                   <u>Z. Culpepper,</u> collectively, the <u>Secretary of FDOC</u> is liable in their personal and official capacity after the (9th) need for protection and the (9th) attack.

17

On 12/3/18, while at Madison C.I., the Plaintiff started to exhaust his administrative remedies, and presented his informal grievance. Log # 216-1812-0058. In said complaint Plaintiff charged an 8th and 14th Amendment violation of the U.S. Constitution. Specifically, he alleged and demonstrated a failure to protect, a deliberate indifference, due process, and cruel and unusual punishment violation. The Plaintiff also cited to each institution and date he was attacked.

34.) As pointed out in said Grievance, in all this, FDOC has failed to protect Plaintiff. The Florida Department of Corrections has a system for tracking of gang members, and institutions with the most problems and inmates in a threat group. Those spots, despite his victim status. It is the mission of the Defendants to always place the safety of offenders, public and staff at the forefront of their efforts. For this very reason, the review for protective needs process is in place. The Plaintiff remedy request was a placement in a protection unit.

35.) On December 11, 2018, the ICT S. Beardon from Madison C.I. responded with a boilerplate response, "due to the PM process not being complete your grievance is being returned." Id. Log # 216-1812-0058.  It is noted the response clearly demonstrates if the process was not complete. Beardon had this information before the process was complete, and thus, had a chance to fix the process and recommend a protective unit. The Plaintiff December 17, 2018 filed an appeal Log # 1812-216-100 directed to the Warden, but it was short stopped and also responded to by Mrs. Beardon at Madison C.I. and which all Defendants was on notice of and was in possession of.

36.) On December 28, 2018, the ICT S. Beardon incompetently responded to appeal as follows: "You are currently pending a [resolved protection transfer] and the process is complete. Your protection hearing was held on December 17, 2018 which was according to policy and procedure." Id. For the tenth (10th) time, and all Beardon actually did was recommended a "resolved protection transfer." A total,

and intentional failure to protect, and deliberate indifference. The Plaintiff

followed the last step, and filed his appeal to the Defendants, the <u>Secetary FDOC</u>

and Defendants <u>SCO</u>, and designated Defendants, _____ and <u>Z. Culpepper</u>.

37.) In appeal <u>Log # 19-6-01106</u>, the Plaintiff pointed out that it was his 8th or 9th

"resolved protection" transfer from 2015, as pointed out in his informal. <u>Id</u>. That

he had a documented history of being the victim of assaults, batteries, and sexual

batteries, stabbed twice, and hit with a lock. The Plaintiff pointed out that the "hit"

continues to follow him and that he is in "<u>imminent danger of serious physical</u>

<u>injury</u>." The  Plaintiff's remedy was a continued plea for help and a placement in a

protective unit, all to no avail.

38.) On <u>January 8, 2019</u>, (three) days before arriving at <u>Columbia C.I. Annex</u>, and

about a week before his <u>Columbia C.I.</u> attack, the Central Office Defendants,

<u>Secretary FDOC</u>, and <u>Z. Culpepper</u> and <u>SCO</u>, responded as follows: "Your request

for administrative review has been received, reviewed and evaluated. The

Institutional Classification Team recommended [and] the State Classification

Officer approved you for a [resolved protection transfer]. [It was determined that

this type] of transfer would resolve your current need for protection and that

placement into [a protective management facility] was [not warranted] at this

time." <u>Id</u>.

39. As clearly demonstrated here, Plaintiff labeled as a "snitch" by officials,

Plaintiff is an active ongoing target by gang members at each institution he has

been picked by Defendants <u>Workman, Holms and Inch</u>, together with each ICT

Defendant at all (11) Institutions cited herein. Where, on different occasions,

Plaintiff has been threatened with injury, stabbed (two times), battered, sexually

assaulted (four times), hit in the head with a lock, threatened and assaulted at knife

point, and told that he was going to be subject of a "hit" no matter where he goes.

Plaintiff needed and received medical attention for his various injuries. Although

19

Plaintiff requested a placement in a "protective unit" despite their notice and documented history of abuse, or need for protection, the Institutional Classification Team (ICT) at each institution recommended worthless "resolved protection" transfer to another harmful institution.

40.) The Florida Department of Corrections State Classification Office (SCO) Defendants Workman, Holms and Inch approved the "resolved protection" transfer recommendation of the ICT's at each institution in reckless disregard of the obvious risk of further harm. Despite the SCO Defendants, which is located in Tallahassee, Central Office is responsible for the review of, and for approving or rejecting, the classification recommendations made by the ICT's. It was obvious to all Defendants that when multiple transfers proved ineffective at stopping the attacks on Plaintiff, reasonable action to abate attacks should have been taken. For example, placement in a protective unit. The Plaintiff filed grievances, which when denied, were appealed unsuccessfully to state officials in Tallahassee, Defendants Inch and Culpepper, who accepted the determinations of the Defendant ICT's, and SCO's, that "a [resolved protection transfer]....would resolve your current need for protection and that placement into [a protective management facility] was [not warranted]."

41.) The Plaintiff submits, here, Defendants SCO, and Inch has intentionally failed to appropriately review the decisions of the ICT's and provided the protection he needs from continuing attacks and threats by gang members. The Defendants (all) knew merely transferring him from one handpicked punishment "disciplinary" institution to another has not and would not brought an end to the gang retaliation he is experiencing and that the ongoing pattern of acts reaches beyond what happened at any individual institution, to include what happened at the statewide offices of the Florida Department of Corrections in Tallahassee.

42.) The Defendants at Central Office and the Secretary have all acted in bad faith and totally failed the protection, care, custody and control standards of the Department and that of the Constitution. How could any good faith, reasonable person find and "determined" that "placement into a protective management facility was [not] warranted at this time," in face of documented history of (10) ten attacks, and (ten) "resolved protection" transfers, for being a victim of stabbings, sexual abuse, and other abuses? As the     Herring at Columbia C.I., the ICT chairman put it, "the protective unit is full of nothing but gang members." Why would Defendants find it better to protect the very people who has distorted the Florida Prison system, over a non-gang member? If they only have two protective units in the State of Florida. This is a serious problem that must be addressed, and constitutionally corrected, at bottom. Defendants' actions/inactions are in bad faith, maliciousness, and has caused a failure to protect, deliberate indifference, due process, equal protection, inflicting cruel and unusual punishment. The Plaintiff is imminent danger of serious injury or death.

43.) After shortly receiving resolved protection transfer and arriving at Hamilton C.I., Main Unit, in addition to the facts pointed out in paragraphs 27-28 (adopted by reference). On April 25, 2019, Plaintiff was retaliated on by security staff for reporting that they ordered gang members to harm him and other inmates for "writ writing" and "snitching." Plaintiff was placed in Administrative Confinement. After filing several grievances, Plaintiff was released from confinement on May 8, 2019, and on May 9, 2019, was transferred to the Annex of Hamilton.

44.) While at Hamilton Annex, the very officers and inmates Plaintiff was removed from     a "hit" being placed on him, they was sent to Annex to follow Plaintiff. Plaintiff was attacked by gang members and forced to request protection for the 11th time. On June 13, 2019, Plaintiff was placed in Administrative Confinement for protection by the (ICT). Finally, after four years of being attacked and harmed

21

and making repeated requests to all five Defendants for a "protection unit", on July 2, 2019, the Hamilton C.I. ICT recommended and the (SCO) approved a protection unit.

45.) Despite this gross intentional belated approval for a protection unit (after four years) the damages have been done. All five Defendants are liable because they knew there was a risk of serious harm to Plaintiff. These Defendants knew because Plaintiff notified them, his family notified them, and they were also armed with a well documented history of Plaintiff being targeted for four years. It was only after 11th attack and their notice of this action did they finally act. The Plaintiff is tied to the tracks and the train is coming around the bend and this lawsuit is my and many others only hope.

46.) The Plaintiff is still under imminent danger of serious physical harm even to where he is housed. This is because the Defendant has filled its protection management unit with 80% gang members, the very people who is after Plaintiff. This is a policy or custom by Defendant Inch that is intentional and belies the fact a protection unit is required to be safe, yet it is not. There has been several stabbings in the unit and gang members are allowed to run and control the unit. It is a matter of time before Plaintiff is attacked. Plaintiff has received word from fellow inmates and officers, he will be targeted soon. In order to properly protect Plaintiff and other statused prisoners, the Defendant Inch must remove all gang members who have a "STG" file with the Department. The Plaintiff is in imminent danger of serious physical injury at Wakulla C.I. protective management unit. As it is full of gang members who are not in need of true protection.

47). ON OR ABOUT July 2, 2019, AFTER THE (10TH) "RESOLVE PROTECTION" TRANSFER, AND 10TH. ATTACK BY GANGMEMBERS, THE PLAINTIFF RECEIVED A PLACEMENT INTO THE PROTECTIVE MANAGEMENT UNIT BY THE HAMILTON C.I., ICT-TEAM, AND APPROVED BY DEFENDANTS, HOLEMS, INCH AND WORKMAN.

48). IN LATE July OF 2019, THE PLAINTIFF ARRIVED AT WAKULLA C.I. ANNEX FOR PLACEMENT INTO THE PROTECTIVE MANAGEMENT UNIT. BECAUSE OF THE DEFENDANTS, INCH, WORKMAN, AND CULPEPPERS' FAILURE TO KEEP THE UNIT SAFE, WITHIN A WEEK OF ARRIVING, THE PLAINTIFF WAS THREATENED WITH INJURY BY GANG MEMBERS WHO THE AFORESAID DEFENDANTS ALLOWED TO ALSO BE PLACED INTO THE PROTECTION UNIT, DESPITE THEIR NOTICE AND RECORDED HISTORY OF VIOLENCE BY THESE GANG MEMBERS.

49). THE WAKULLA C.I., STAFF, AND CENTRAL OFFICE DEFENDANTS, INCH, CULPEPPER, AND WORKMAN ALL KNEW AND WAS ON NOTICE FROM THE PLAINTIFF, THROUGH THE GRIEVANCE PROCESS, OF THE IMMINENT DANGER, THE GANG BANGING ON THE UNIT, AND SEVERAL ATTACKS, STABBING, SEXUAL ABUSE AMONGS OTHER ACTS.

50.). ON JULY 31, 2019, THE PLAINTIFF AFTER NOTICING HIS LIFE AND SAFETY WAS IN DANGER OF A SUBSTANTIAL RISK OF SERIOUS HARM BY THREATS RECEIVED, HE NOTIFIED ALL DEFENDANTS AND AFORESAID OFFICIALS BY FILING AN INFORMAL GRIEVANCE, LOG # 122-1908-0013. DESPITE THIS, THE COMPLAINT WAS RECEIVED ON AUGUST 2, 2019 AND ON THE SAME DAY, IT WAS "DENIED." ON AUGUST 6, 2019, THE PLAINTIFF FILED AN APPEAL TO THE WARDENS AND ON AUGUST 8, 2019, IT ALSO WAS DENIED LOG # 1908-118-043. ON AUGUST 15, 2019, AN APPEAL WAS FILED TO DEFENDANTS, INCH AND CULPEPPER AND ON AUGUST 22, 2019 THE DEFENDANTS "DENIED" THE FINAL APPEAL, LOG # 19-6-30940.

51) AS A RESULT OF THE DEFENDANTS, INCH, AND CULPEPPER'S ACTIONS OR INACTIONS, FAILURE TO PROTECT AND DELIBERATE INDIFFERENCE, ON SEPTEMBER 14, 2019, WHILE IN THE PM UNIT THE PLAINTIFF WAS BATTERED BY GANG MEMBERS AS SEVERAL OFFICERS, VANSURH AND MCMULLEN MERELY WATCHED. THE PLAINTIFF WAS BADLY INJURIED AND HAD TO RECEIVE OUTSIDE MEDICAL ATTENTION AT TALLAHASSEE GENERAL HOSPITAL. IN OCTOBER OF 2019, AS A RESULT, PLAINTIFF WAS TRANSFERRED TO COLUMBIA C.I. ANNEX, WHERE HE WAS SAFE FROM HARM.

52.) HOWEVER, (FOUR MONTHS LATER) IN JANUARY OF 2020, WANDA COLLINS, A COLUMBIA C.I., CLASSIFICATION OFFICER, TRICKED THE PLAINTIFF INTO SIGNING A FORM WHICH WAIVED HIS RIGHT TO PROTECTION AND REQUESTED RELEASE FROM THE PROTECTIVE MANAGEMENT UNIT. MRS. COLLINS FALSELY ADVISED PLAINTIFF THAT THE "FORM" WAS TO [CONTINUE] HIS PROTECTION ON THE UNIT." THE PLAINTIFF WAS ON MENTAL HEALTH MEDICATION THAT CAUSED, SLEEPINESS, INSOMNIA, BLURRED VISION, AND CONFUSION WHEREAS PLAINTIFF COULD NOT READ NOR UNDERSTAND WHAT HE WAS FORCED TO SIGN. LATER, THAT SAME DAY, PLAINTIFF WAS ADVISED BY A FELLOW INMATE, MRS. COLLINS TRICKED HIM AND THE FORM WAS INDEED A WAIVER AND NOT FOR "CONTINUED PROTECTION"

AS PRODUCTED BY COLLINS. THE PLAINTIFF SUBMITTED A REQUEST TO WITHDRAW FROM SUCH WAIVER WHICH WAS "DENIED" BY COLLINS. AND THE ICT MEMBERS DID NOT HOLD HEARING OR "INTERVIEW" PLAINTIFF AS REQUIRED.

53.) ON OR ABOUT JANUARY 17, 2020, THE PLAINTIFF STOPPED THE DEFENDANT HOLMS, AND MRS. COLLINS AND ADVISED HE WAS FALSELY ADVISED ABOUT THE FORM, THAT HE WAS IN DURESS AND DID NOT WISH TO WAIVE PROTECTION, THAT AN ACTIVE HIT WAS ON HIM. THE DEFENDANT HOLMS RESPONED, "FILE ANOTHER LAWSUIT YOU GOOD AT THAT." MRS. COLLINS STATED: ONCE THE PROCESS IS STARTED, IT CANT BE STOPPED. AS A RESULT ON JANUARY 31, 2020, PLAINTIFF WAS PLACED ON A BUS FOR TRANSFER TO RECEPTION AND MEDICAL CENTER ("RMC"), WHERE HE WAS TO BE PLACED IN THE GENERAL POPULATION. WHILE ON THE BUS DURING TRANSPORT, PLAINTIFF WAS AGAIN ATTACKED BY GANG MEMBERS.

54.) ON FEBRUARY 3, 2020, PLAINTIFF WAS PLACED ON ANOTHER BUS FOR TRANSFER TO NWFRC. SOME OF THE SAME GANG MEMBERS WHO ATTACKED PLAINTIFF ON JANUARY 31, 2020 WERE ON THE SAME BUS, AND THEY AGAIN ATTACKED PLAINTIFF. UPON ARRIVING AT NWFRC, PLAINTIFF WAS PLACED IN ADMINISTRATIVE CONFINEMENT (NOT FOR PROTECTION BUT BECAUSE HE WAS PENDING DISCIPINARY/ACTION) ALTHOUGH PLAINTIFF WAS HOUSED WITH ANOTHER INMATE, PLAINTIFF FILED A FORMAL GRIEVANCE REGARDING HIS FEBRUARY 3 ATTACK ON THE BUS AND REQUESTED PROTECTIVE MANAGEMENT.

55) CAPTAIN BELLAMY, UPON RECEIPT OF PLAINTIFFS' GRIEVANCE AND REQUEST FOR PROTECTION, THAT SAME DAY, CAPT. BELLAMY DID NOT SURE THAT PROPER PAPERWORK WAS COMPLETED SO PLAINTIFF STATUS REFLECTED "PROTECTION". CAPT. BELLAMY ALSO FAIL TO SUBMIT NOTIFICATION TO CLASSIFICATION, WHICH WOULD HAVE STOP PLAINTIFF FROM LEAVING ADMINISTRATIVE CONFINEMENT AND BEING PLACED IN FUTHER HARM. MEDICAL WAS NOT NOTIFIED OF PLAINTIFFS' HEAD INJURY AND NO PHOTO'S WAS TAKEN. THE GRIEVANCE WAS

"DENIED."

56.) SUBSEQUENTLY, ON FEBRUARY 10, 2020, PLAINTIFF WAS TRANSFERRED TO WALTON C.I. AS RESULT, THE SAME GANG MEMBERS THAT ATTACKED HIM ON THE TRANSFER BUSSES ON JANUARY 31, AND FEBURARY 3 WERE AGAIN ON THE TRANSPORT BUS WITH HIM AND AGAIN ATTACKED HIM. UPON ARRIVAL AT WALTON C.I., PLAINTIFF IMMEDIATELY FILED A GRIEVANCE REGARDING THE ATTACKS AND HIS BEING TRICKED OF PM UNIT, AND HE WAS PLACED IN CONFINEMENT ON "PROTECTION STATUS" PENDING AN INVESTIGATION AND ICT HEARING.

57.) ON FEBRUARY 21, 2020, WHILE PLAINTIFF WAS STILL ON PROTECTION STATUS AND HOUSED ALONE, OFC. DOE AND SGT. THOMPSON PLACED ANOTHER INMATE IN PLAINTIFF'S CELL WHO REPEATEDLY SEXUALLY ASSAULTED PLAINTIFF BY FORCING HIM TO PREFORM ORAL SEX AND ANAL SEX.

58.) ON MARCH 4, 2020, WALTON C.I., ICT MEMBERS, CARROLL, RALPH, MARTIN AND QUINN TO PLAINTIFF, "WE ARE GOING TO RECOMMEND YOU BE RETURNED TO THE [PROTECTIVE MANAGEMENT UNIT]." HOWEVER, PLAINTIFF ALLEGES THAT DEFENDANTS INSTEAD MERELY RECOMMENDED A RESOLVED PROTECTION TRANSFER RATHER THEN A TRUE PROTECTION UNIT. THUS, PLAINTIFF WAS ON MARCH 16, 2020 BACK TO NWFRC, WHERE HE IS PRESENTLY AT, AND IN IMMINENT DANGER.

59.) THE PLAINTIFF IS EXPERIENCING AN ONGOING PATTERN OF ACTS AND ATTACKS AND AS A RESULT IS UNDER IMMINENT DANGER OF SERIOUS PHYSICAL INJURY AT NWFRC, WHERE HE ARRIVED ON MARCH 16, 2020 FROM WALTON C.I. THE PLAINTIFF IS HOUSED IN GENERAL POPULATION AND IN "TRANSIT STATUS" AND IS NOT ALLOWED TO REQUEST PROTECTION AT NWFRC. ADDITIONALLY, PLAINTIFF HAS BEEN ADVISED BY CAPTAIN BELLAMY, "AIN'T NO CHECKING IN" AT NWFRC. DESPITE HIS PENDING THREATS OF DEATH AND FUTHER ABUSE IF HE "CONTINUE TO FILE GRIEVANCES OR REPORT VIA "TIPS LINE," PLAINTIFF WOULD BE EXPOSED AS "SNITCH."

59). ON MAY 04, 2020, AS THE PLAINTIFF WAS ATTENDING THE LAW LIBRARY, WORKING ON GRIEVANCES, AMENDING THIS CASE AND ASSISTING A FELLOW PRISONER, INMATE ALEXANDRE TALUY # L54621. ANDREW PEIL, THE LIBRARY SUPERVISOR," TOOK POSSESSION OF THE GRIEVANCES, AND A MOTION THAT PLAINTIFF PREPARED FOR TALUY. DEFENDANT PEIL READ THE MOTION AND GRIEVANCES AND CALLED DEFENDANT BELLAMY TO COME TO LIBRARY.

60). CAPTAIN BELLAMY AND PEIL TOOK THE PLAINTIFF IN THE OFFICE, WHERE PLAINTIFF WAS PLACED IN HANDCUFFS. THE GRIEVANCES TO TALLAHASSEE AND TO THE WARDEN WAS HANDED TO BELLAMY AND WAS READ BY HER. BELLAMY ACCUSED PLAINTIFF OF BEING A "PUNK ASS SNITCH," AND A "WRIT WRITTER." CAPT. BELLAMY SLAP PLAINTIFF ABOUT THE FACE AND ADVISED PEIL TO DO THE SAME, AND PEIL SLAPPED THE PLAINTIFF.

61). THE CAPTAIN BELLAMY THEN HELD A HOMEMADE KNIFE TO THE PLAINTIFF'S NECK AND ADVISED HE, WE ARE SICK OF YOUR COMPLAINTING AND GRIEVANCE WRITTING. SHE THEN HAD PEIL INSERT HIS FINGERS INTO PLAINTIFF'S RECTUM CLAIMING THEY WERE LOOKING FOR "DRUGS" THAT PLAINTIFF "MAY BE SUITCASING." THE CAPT. BELLAMY THEN ADVISED IF PLAINTIFF "REPORT ANY OF WHAT TOOK PLACE" OR "PUT IT ON A GRIEVANCE," THEY WILL PUT AN "ENTIRE FOOT IN YOUR ASS," AND "HAVE YOU BEAT TO DEATH." ALL THE GRIEVANCES WAS RIPPED UP AND INMATE TALUY'S MOTION WAS DEEMED AS CONTRABAND.

62). ON MAY 10, 2020, AT 9:30 AM, CAPT. BELLAMY SERVED PLAINTIFF A DISCIPLINARY REPORT FOR "POSSESSION OF CONTRABAND," FOR BEXING IN POSSESSION OF A MOTION THAT HE WROTE FOR TALUY. ON MAY 14, 2020, THE PLAINTIFF WAS FOUND GUILTY OF SAID INFRACT AND GIVEN (15) DAYS PROBATION AND TOLD, "JUST KEEP YOUR MOUTH CLOSED."

64). On June 11, 2020, the Plaintiff was transferred from the "NWFRC" Back to Santa Rosa C.I. Annex. He is now in Futher Imminent Danger of Serious Physical Injury.

65). From July 15, 2020 to date, the Plaintiff has been attacked and sexually abused by several gangmembers. The Plaintiff was removed from his two man cell in Lima dorm and placed in a open bay dorm, (M-Dorm) with mostly all gangmembers, where he has been made to "Pay Rent" by giving up his food and proform sexual acts. The Plaintiff has also been beat up and threatened if he file any grievances and forced to withdraw his Santa Rosa grievances by staff. The Plaintiff has made several requests for Protective Management while at Santa Rosa C.I., and all has been denied by Capt. Brown, Capt. P. Tucker and each other shift supervisor.

66). In July of 2020, the same day Plaintiff was moved to M2-Dorm, several gangmembers threatened him with a knife and punched him in the face, and on Camera, on July 22, 2020, between 1:15 PM and 2:00 PM, a gangmember attacked Plaintiff as he sat on his bed.

67). The Plaintiff is in Imminent Danger of serious physical danger at all times herein and when filing this Fifth Amended complaint.

# VI. STATEMENT OF CLAIMS:

STATE WHAT RIGHTS UNDER THE CONSTITUTION, LAWS, OR TREATIES OF THE UNITED STATES YOU CLAIM HAVE BEEN VIOLATED. BE SPECIFIC. NUMBER EACH SEPARATE CLAIM AND RELATE IT TO THE FACTS ALLEGED IN SECTION V. IF CLAIMS ARE NOT RELATED TO THE SAME BASIC INCIDENT OR ISSUE, THEY MUST BE ADDRESSED IN A SEPARATE CIVIL RIGHTS COMPLAINT.

A. THE DEFENDANT RUSSELL, HAS VIOLATED THE PLAINTIFF'S 8TH. AND 14TH. AMENDMENT RIGHTS TO BE FREE FROM THE INFLICTION OF CRUEL AND UNUSUAL PUNISHMENT. THE PLAINTIFF ADOPTS THE STATEMENT OF CLAIMS, Id. AT "B" HEREIN AND MAKES IT APART HERETO.

B. THE DEFENDANTS, INCH, WORKMAN, AND HOLMS AND CULPEPPER, HAS FUTHER VIOLATED PLAINTIFFS 8TH. AND 14TH AMENDMENT RIGHTS TO BE FREE FROM INFLICTION OF CRUEL AND UNUSUAL PUNISHMENT. EACH DEFENDANT HAS FAIL TO PROTECT THE PLAINTIFF FROM A KNOWN RISK OF HARM AND OTHERWISE WAS DELIBERATELY INDIFFERENT TO HIS REPEATED REQUESTS AND NEED FOR PROTECTION. PRAG'S (50-64).

C. EACH DEFENDANT BY THEIR ACTIONS OR INACTIONS HAS RESULTED IN PLAINTIFF BEING ATTACKED AND INJURIED BY GANGMEMBERS, SEXUALLY ABUSED BY CAPT. BELLAMY, AND MR. PEIL AND SEXUALLY BATTERED BY A CELLMATE RANDY GRIFFIN ALL FROM THEIR FAILURE TO PROTECT AND DELIBERATE INDIFFRENCE TO HIS REPEATED REQUEST FOR PROTECTION. PRAG'S (55-58) (61-63).

D. THE DEFENDANTS HOLMS, INCH, CULPEPPER, AND WORKMAN, ANTONIO ALONG WITH THE COLUMBIA C.I., ICT- MEMBERS VIOLATED PLAINTIFFS RIGHTS UNDER THE 14TH. AMENDMENT TO THE U.S. CONSTITUTION BY REMOVING PLAINTIFF FROM THE PROTECTION MANAGEMENT UNIT WITHOUT THE ICT MEMBERS HOLDING A HEARING ON THE PROPURTED SIGNED WAIVER OF PROTECTION. AS A RESULT THE PLAINTIFF WAS HARMED. Id. PRAG's (53-64).

E. EACH DEFENDANT HAS VIOLATED PLAINTIFFS RIGHTS UNDER ARTICLE I, SECTIONS 2, 9, AND 17 OF THE FLORIDA CONSTITUTION, FOR THE REASONS STATED IN PRAG's (50 - 64).

**VII. RELIEF REQUESTED:**

STATE BRIEFLY WHAT RELIEF YOU SEEK FROM THE COURT. DO NOT MAKE LEGAL ARGUMENT OR CITE TO CASES/STATUTES.

WHEREFORE, PLAINTIFF RESPECTFULLY PRAYS THAT THIS COURT ENTER JUDGMENT TO PLAINTIFF AS FOLLOWS:

1. COMPENSATORY DAMAGES: IN THE AMOUNT OF 2. MILLION DOLLARS, AS TO EACH DEFENDANT, JOINTLY AND SEVERALLY.

2. PUNITIVE DAMAGES: OF $ 300.000.00, AS TO EACH DEFENDANT JOINTLY AND SEVERALLY.

3. PRELIMINARY INJUNCTION: IN THE FORM OF PROTECTING THE PLAINTIFF FROM THE ONGOING PATTERN OF HARM AT THE HANDS OF GANG MEMBERS, FROM THE SUFFERING OF IRREPARABLE HARM. BY ORDERING PLAINTIFF PLACED IN THE PROTECTIVE MANAGEMENT UNIT AT COLUMBIA C.I., ANNEX. AND/OR

4. TRO / PROSPECTIVE RELIEF: AN ORDER ORDERING THE DEFENDANTS TO PLACE PLAINTIFF IN THE PROTECTIVE MANAGEMENT UNIT AT COLUMBIA C.I., ANNEX, DUE TO HIS EXTREMLY HARSH CONDICTIONS, PATTERN OF ABUSE, "HIT" BY GANG MEMBERS AND CONTINUING VIOLATION OF HIS RIGHTS.

**I DECLARE UNDER PENALTIES OF PERJURY THAT THE FOREGOING STATEMENT OF FACT, INCLUDING ALL CONTINUATION PAGES, IS TRUE AND CORRECT.**

8/19/2020
(Date)

(Signature of Plaintiff)

## IF MAILED BY PRISONER:

I declare (or certify, verify, or affirm) under penalties of perjury that this complaint was (check one):

( ✗ ) Delivered to prison officials for mailing or ( · ) deposited in the prison's internal mail system on:

The _19TH_ day of _August_, 20_20_.

(Signature of Plaintiff)

32.

AARON C. PORTER # L37704
SANTA ROSA CORRECTIONAL INSTITUTION - ANNEX
5850 EAST MILTON ROAD
MILTON, FLA. 32583

MAILED FROM A STATE
CORRECTIONAL INSTITUTION

US POSTAGE >> PITNEY BOWES

ZIP 32583
02 4W
0000368416 AUG 20 2020

$ 002.00°

THU 10 SEP 2020

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
OFFICE OF THE CLERK
111 NORTH ADAMS STREET # 322
TALLAHASSEE, FL 32301 - 7717

LEGAL
MAIL

OFFI111  326  4C 1   N  C7208/28/20
UNABLE TO FORWARD/FOR REVIEW  **#####**



PROVIDED TO
SANTA ROSA C.I. ON

AUG 1 9 2029

FOR MAILING BY