## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

**AARON C. PORTER,**
**D.O.C. #L37704,**

      **Plaintiff,**

**vs.**                                                    **Case No. 4:19cv126-WS-MAF**

**SECRETARY RICKY DIXON,[1]**
**MARK S. INCH, Z. CULPEPPER,**
**M. WORKMAN, Y. HOLMS,**
**and C. RUSSELL,**

      **Defendants.**
_____/

## REPORT AND RECOMMENDATION

At the conclusion of the discovery period, *see* ECF No. 71,

Defendants filed a motion for summary judgment, ECF No. 79, supported

by several exhibits.  Two of the exhibits were separately filed under seal,

_____

[1] Plaintiff's sixth amended complaint named Secretary Mark S. Inch as a Defendant in this case.  ECF No. 68 at 1.  To the degree Plaintiff has raised a claim against the Secretary in his official capacity, judicial notice is taken that Mark S. Inch is no longer Secretary of the Florida Department of Corrections.  In late November 2021, Ricky D. Dixon was appointed Secretary of the Department.  Secretary Dixon is automatically substituted as a Defendant pursuant to FED. R. CIV. P. 25(d), and the Clerk of Court is directed to correct the docket to reflect this change.  Former Secretary Inch remains a Defendant in his individual capacity.

ECF No. 81, but Plaintiff was provided with a copy of the exhibits.  *See*

ECF No. 81 at 3; ECF Nos. 92-93; ECF Nos. 98-99.  Although Plaintiff was

provided with four extensions of time in which to file his opposition to the

motion, *see* ECF Nos. 86, 89, 95, and 102, he has not filed a response.

Plaintiff's September 27, 2021, deadline has long passed.  Despite the

summary judgment motion being unopposed, it has been fully reviewed[2]

and will not be granted by default.  ECF No. 80.

**The Sixth Amended Complaint, ECF No. 68**

Plaintiff acknowledges that he is a "three striker," ECF No. 68 at 7-8,

but claims he is facing a "likelihood of imminent danger of physical injury,

or death."  *Id.* at 8, 16.  In general, Plaintiff claims that he is a "victim of

repeated attacks, abuse, stabbings, and rapes" because he has been

labeled as a "snitch."  *Id.* at 9-10.  Rather than placing Plaintiff in a

"protective management unit," he alleges that he is given "resolved

protection" transfers which, according to Plaintiff, do not resolve his need

for protection.  *Id.* at 15.  Plaintiff has received 10 such transfers, but

"within weeks" is attacked again.  *Id.* at 17.

---

[2] Local Rule 7.1(H) provides that the "Court may grant a motion by default if an opposing party does not file a memorandum as required by this rule."  Plaintiff was advised of the consequences should he not respond.  ECF Nos. 80, 89.

**Standard of Review**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  Thus, summary judgment is proper "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986).  Here, the parties were given from April 6, 2021, through August 17, 2021, to conduct discovery.  ECF Nos. 22, 42.[3]

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp., 477 U.S. at 323, 106 S. Ct. at 2553.  The non-moving

---

[3]  The discovery period was extended briefly so Plaintiff could have sufficient time to review a video (DVD) and other documentary evidence.  ECF No. 42.

party must then show though affidavits or other Rule 56 evidence "that there is a genuine issue for trial" or "an absence of evidence to support the nonmoving party's case."  *Id.* at 325, 106 S. Ct. at 2554; Beard v. Banks, 548 U.S. 521, 529, 126 S. Ct. 2572, 2578, 165 L. Ed. 2d 697 (2006).

An issue of fact is "material" if it could affect the outcome of the case. Hickson Corp. v. Northern Crossarm Co., Inc., 357 F.3d 1256, 1259 (11th Cir. 2004) (citations omitted).  Additionally, "the issue of fact must be 'genuine'" and the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986) (other citations omitted).  "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case."  McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1243 (11th Cir. 2003) (quoting Chapman v. AI Transp., 229 F.3d 1012, 1023 (11th Cir. 2000)).  All reasonable inferences must be resolved in the light most favorable to the nonmoving party, Sconiers v. Lockhart, 946 F.3d 1256, 1262-63 (11th Cir. 2020), and the Court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or

whether it is so one-sided that one party must prevail as a matter of law."

Hickson Corp., 357 F.3d at 1260 (quoting Anderson v. Liberty Lobby, 477

U.S. 242, 252, 106 S. Ct. 2505, 2505, 91 L. Ed. 2d 202 (1986)).

"Summary judgment is not a time for fact-finding; that task is reserved

for trial."  Sconiers, 946 F.3d at 1263 (citing Tolan v. Cotton, 572 U.S. 650,

655-57, 134 S. Ct. 1861, 188 L. Ed. 2d 895 (2014)).  "[A]t the summary

judgment stage the judge's function is not himself to weigh the evidence

and determine the truth of the matter but to determine whether there is a

genuine issue for trial."  Anderson, 477 U.S. at 249, 106 S. Ct. at 2511

(quoted in Sears v. Roberts, 922 F.3d 1199, 1205 (11th Cir. 2019)).

**The Relevant Rule 56(e) Evidence**

When this case was filed in March of 2019, Plaintiff was housed in a

single man cell in administrative confinement.  Ex. A (ECF No. 79-1 at 2).

Even though he was in a single man cell, Plaintiff said officers allowed

inmates in the cell and, on February 20, 2019, correctional officers offered

another inmate "$50.00 in drugs to rap [sic] and beat Plaintiff."  ECF No. 1

at 23.

Plaintiff was previously in protective confinement between November

20, 2018, and January 9, 2019, while housed at Madison C.I.  *Id.*

However, after his transfer to Columbia Annex on January 11, 2019, he

was assigned to a regular housing unit.[4]  *Id.*  On January 30, 2019, he was

placed in a single man cell in administrative confinement, but the next day

he was given a different cell assignment in administrative confinement and

placed in a lower bunk, ECF No. 79-1 at 2, suggesting that he was sharing

a cell with another prisoner.  On March 1, 2019, he was again placed in a

single cell in administrative confinement at Columbia Annex.  *Id.*

He was transferred away from Columbia in the latter part of March

2019, temporarily going to the N.W. Florida Reception Center before

arriving at Hamilton C.I. Annex on March 29, 2019.  ECF No. 79-1 at 3.  He

was moved into administrative confinement on April 25, 2019.  *Id.*

However, he was transferred to the main unit of Hamilton Correctional

Institution on May 9, 2019.  *Id.*  In less than a month, Plaintiff was again

placed in administrative confinement pending protection.  *Id.*  On July 11,

2019, Plaintiff was transferred to Wakulla Annex (where he currently is

housed) and on July 22, 2019, placed in protective management.  *Id.*

_____

[4] The evidence also reveals that Plaintiff had provided information as to the
location of weapons and the person making them.  ECF No. 81 at 17.  A
recommendation was made in late December 2018 for Plaintiff to be given a "resolve
protection transfer" because it was believed other inmates would view Plaintiff as an
informant.  ECF No. 81 at 17.

Although Defendants have done little to explain the documents making up Exhibit B (ECF No. 81), it appears that an investigation was undertaken into Plaintiff's allegations concerning events at Columbia C.I. ECF No. 81 at 5.  In mid-February 2019, the "case management log entry" reveals that Plaintiff informed his housing supervisor on January 29, 2019, that he was in fear for his life from several inmates who held him down, displayed "a homemade weapon," and put a knife against his neck.  *Id.* at 11-16.  The recommendation was made to transfer Plaintiff "out of Region II to resolve his need for protection."  *Id.* at 10.

The record reveals staff ultimately concluded that Plaintiff provided "creditable information" for an "active IG investigation" concerning both staff and inmates.  *Id.* at 5.  On March 19, 2019, while Plaintiff was in transit at the Reception Center, a recommendation was made for Plaintiff to have another resolved protective transfer.  *Id.*; *see also* ECF No. 81 at 8.

Defendants acknowledge that "[d]uring the course of Plaintiff's incarceration, he has received at least ten (10) resolved protection transfers, and two (2) protective management unit placements."  ECF No. 79 at 3 (citing to Exhibits B-C).  Notably, Plaintiff "also either waived protective management, or" chose "not to appeal the denial of" placement

in protective management four (4) separate times.  ECF No. 79 at 3 (citing Ex. D).  On May 17, 2015, Plaintiff voluntarily requested to be "released from administrative confinement pending protection."  Ex. D (ECF No. 79-2 at 2).  He indicated he was "not in fear" and did not feel that he needed protection at that time.  *Id.*

Additionally, in October of 2018, Plaintiff was informed that he had been disapproved for protective management status.  ECF No. 79-2 at 3.  Plaintiff was provided a notification form which permitted him to state whether he wanted to appeal the decision or not.  *Id.*  Plaintiff checked the box on the form indicating that he did not want to appeal the decision to the Secretary, acknowledging that he would be released from administrative confinement.  *Id.*  Plaintiff has declared that he requested release because he knew "that all the defendants would do was merely transfer him and title it a 'resolved protection.'"  ECF No. 1 at 14.

Plaintiff was transferred to Wakulla C.I. Annex in July 2019 and placed in protective management.  ECF No. 79-1 at 3.  On November 21, 2019, Plaintiff submitted an inmate request form to the Classification Department indicating he wanted to be removed from the protective management unit.  ECF No. 79-2 at 5.  Plaintiff handwrote a notation on

the typed form which stated: "I am not protected on the p.m. unit." *Id.* On

that same day, Plaintiff also completed a "waiver" form in which he

requested that he be released, affirmed that he was making the request of

his own free will, and advised that he did not feel that he needed protection

at this time. *Id.* at 6. Two hand written notations on that form - which do

not appear to be Plaintiff's handwriting - indicate Plaintiff "stated willing to

go anywhere" and "stated no longer needs protection." *Id.* In addition,

Plaintiff signed another "waiver" form on January 16, 2020,[5] again

requesting "to be released from administrative confinement pending

protection." *Id.* at 7. Notwithstanding, it appears from the "Internal

Movements" printout that Plaintiff has remained in protective management.

ECF No. 79-1 at 3.

**Analysis**

**A.     Request to revoke in forma pauperis status**

Defendants argue that Plaintiff's in forma pauperis status should be

revoked and this case dismissed without prejudice because "Plaintiff was

---

[5] In December of 2019, Plaintiff submitted service copies of his third amended complaint, ECF No. 20. ECF No. 26. On January 30, 2020, Plaintiff requested this Court direct service. ECF No. 28. Thus, despite waiving protection on January 16, 2020, Plaintiff was still pursuing this case.

not in imminent danger when he filed the complaint or any amended

complaint thereafter."  ECF No. 79 at 6.  In support of that argument,

Defendants state that between March 1, 2019, and March 22, 2019, he

was housed in a single man cell in "administrative confinement" pending

review of his request for protective management.  *Id.* at 9-10.  Because this

case was initiated by Plaintiff on March 11, 2019, while he was

incarcerated in Columbia Correctional Institution Annex, housed alone,

Defendants contend he was not in imminent danger and was only

complaining about past events.  *Id.* at 6.

     "Under 28 U.S.C. § 1915, a litigant who is unable to pay court fees or

give security for payment may proceed in forma pauperis."  Owens v.

Townsend, No. 4:18CV422-RH-MAF, 2020 WL 5628934, at *1 (N.D. Fla.

Sept. 21, 2020).  "But the section includes an important limitation: a

prisoner who has lost in three prior proceedings on specified

grounds—who has 'three strikes'—can proceed in forma pauperis only if

the prisoner is in imminent danger of serious physical injury."  Owens, 2020

WL 5628934, at *1.  The in forma pauperis statute provides:

     In no event shall a prisoner bring a civil action or appeal a
     judgment in a civil action or proceeding under this section if the
     prisoner has, on 3 or more prior occasions, while incarcerated

or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).  Plaintiff admittedly has 3 or more such dismissals and stated that he was in imminent danger.  ECF No. 1 at 9.  At the time of case initiation, he sought to invoke "the exception to S. 1915(g)."  *Id.*

To determine if Plaintiff adequately alleged imminent danger at the time of case initiation, Plaintiff's initial complaint, ECF No. 1, has been reviewed.  Plaintiff alleged that he was serving a life sentence and entered the custody of the D.O.C.  in 2010.  ECF No. 1 at 9.  In 2015, while housed at Taylor C.I., he was attacked by several gang members and was labeled a snitch.  *Id.* at 10.  It was recommended that he receive a "resolved protection transfer," and he was transferred, but to another institution which Plaintiff alleged was "another infested gang institution."  *Id.* at 11.  Plaintiff alleged that a "hit" was placed on his life and he continued to be attacked and "marked" as a "snitch."  *Id.*  He alleged that the Department began a pattern of transferring him and denying him protective management.  ECF No. 1.

As applicable to the argument concerning imminent danger, Plaintiff said he was transferred on January 11, 2019, to Columbia Correctional Institution on a "resolved protection transfer."  ECF No. 1 at 15.  However, by January 18, 2019, Plaintiff alleged that he was sexually abused by an inmate at knife point.  *Id.* at 16.  Plaintiff requested protection, but his request was denied.  *Id.* at 16-17.  Between January 18 and January 30, Plaintiff said that several inmates were calling and texting his family in an attempt to extort money, and on January 29th, an inmate attempted to stab him.  *Id.* at 17.  Plaintiff said he was eventually placed in "administrative confinement, pending protection."  *Id.* at 18.  Nevertheless, even while in administrative confinement, Plaintiff continued to receive threats and sexual harassment in February 2019.  *Id.* at 19-23.

Plaintiff initiated this case on March 11, 2019,[6] while housed at Columbia Correctional Institution.  ECF No. 1 at 2.  His complaint alleged that he had received 10 transfers - which did not resolve his need for protection - instead of prison officials approving him for placement "in a protective unit."  *Id.* at 27.  Plaintiff said, "enough is enough" and sought to

---

[6] Pursuant to the prison mailbox rule, Plaintiff's complaint was filed on March 11, 2019, the date he gave it to prison officials to mail for him.  ECF No. 1 at 31.  The complaint was received in this Court on March 15, 2019.

end the practice of repetitive and ineffective transfers which he claims is "deliberate indifference." *Id.*

Plaintiff sufficiently alleged that his need for protection was not being met by transfers which placed him in danger once again at a new institution.  Construed in the light most favorable to Plaintiff as the non-moving party, it was reasonable for Plaintiff to believe that he would again be denied protective management and simply transferred to another institution where he would again be targeted as a snitch.  He also alleged that the "hit" placed against him "continues to follow him" when he is transferred.  *Id.* at 29.

The argument that Plaintiff was not facing imminent danger at the time of case initiation should be rejected.  He faced it prior to his transfer away from Columbia C.I. and he faced it again after arriving at Hamilton C.I. which is why prison officials placed him in administrative confinement pending protective custody review, and then transferred him to Wakulla C.I. ECF No. 79-1 at 3.  Plaintiff's multiple transfers support finding that Plaintiff was in the danger of serious physical injury, and that fact was known by prison officials.

Moreover, Plaintiff alleged that even though he was designated for "housed alone status," officers would allow certain inmates into the cell and, on at least one occasion, sought to pay an inmate with drugs to sexually assault "and beat Plaintiff." ECF No. 1 at 23. This is not a case of an inmate alleging only past danger. Plaintiff sufficiently alleged facts showing that he faced current and ongoing danger. Defendants' request to "revoke Plaintiff's in forma pauperis status and dismiss this action," ECF No. 79 at 10, should be rejected.

## B. Failed to properly exhaust administrative remedies

Defendants also contend that Plaintiff did not properly exhaust his administrative remedies as required by 42 U.S.C. § 1997e(a). ECF No. 79 at 10-17. The basis for that argument is that Plaintiff's complaint alleged facts indicating Plaintiff needed protection because he had been targeted by gang members and was labeled a snitch. *Id.* However, Defendants contend that during Plaintiff's deposition, he "stated for the first time a different reason that he was allegedly targeted by gang members at every institution when he was provided a resolved protection transfer - his sexual status." ECF No. 79 at 16 (citing Exhibit E at 58-60) (*see* ECF No. 79-3 at 2). Defendants argue that they had no notice "in any of the protective

management requests, investigations, nor even his Sixth Amended

Complaint, that Plaintiff was being targeted for being transgender."  ECF

No. 79 at 17.  Defendants also argue that because "Plaintiff chose not to

appeal the decision of the State Classification Office to deny placement in

protective management on October 19, 2018," that this case "must be

dismissed due to lack of exhaustion of administrative remedies."  *Id.* at 17-

18.  Defendants assert that "Plaintiff cannot be allowed to proceed on

unexhausted claims."  *Id.* at 18.

Defendants are correct that a plaintiff cannot proceed if his claims are

unexhausted.  In enacting the Prison Litigation Reform Act, Congress

mandated that "[n]o action shall be brought with respect to prison

conditions under section 1983 of this title, or any other Federal law, by a

prisoner confined in any jail, prison, or other correctional facility until such

administrative remedies as are available are exhausted."  42 U.S.C. §

1997e(a).  The exhaustion requirement of § 1997e(a) is mandatory,

whether the claim is brought pursuant to § 1983 or Bivens.  Alexander v.

Hawk, 159 F.3d 1321, 1324-26 (11th Cir. 1998); Bryant v. Rich, 530 F.3d

1368, 1374 n.10 (11th Cir.), *cert. denied*, 129 S.Ct. 733 (2008).  There is

no discretion to waive this requirement or provide continuances of prisoner

litigation in the event that a claim has not been exhausted prior to filing. Alexander, 159 F.3d at 1325; *see also* Porter v. Nussle, 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002) (holding that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong"); Brown v. Sikes, 212 F.3d 1205, 1207-08 (11th Cir. 2000).

However, the argument raised by Defendants is not an exhaustion issue. Instead, the issue is whether or not Plaintiff has raised a claim in this case concerning the denial of protection because Plaintiff is a transgender inmate. He did not. The sixth amended complaint alleged only that he had been labeled a "snitch," had a "hit" placed against him by a gang, and that he received ten (10) "resolved protection" transfers which Plaintiff contends are a "sham" because the transfers are not effective in protecting him. ECF No. 68 at 17, 20, and 22. Plaintiff alleged that he has suffered physical assault and sexual abuse because Defendants are deliberately indifferent to his repeated requests for protection. *Id.* at 23. Plaintiff did not raise a claim in this case concerning any failure to protect him because he is transgender. Indeed, Plaintiff acknowledged in his

deposition that this case does not concern a transgender claim.  *See* ECF No. 79-3 at 2 (Plaintiff stated: "But I don't think that my issue in that particular complaint dealt with the transgender aspect of it.  I think that this complaint dealt with the fact that the procedure for placing an inmate in the protective management unit was grossly not followed").

Moreover, the remedy for failing to exhaust a claim is to dismiss that claim, not the entire case, a rule recognized by Defendants.  *See* ECF No. 79 at 13.  Accordingly, even if Defendants were correct in arguing that Plaintiff was attempting to litigate an unexhausted claim, the Court should separate that claim out and proceed on only those claims that were exhausted.  Jones v. Bock, 549 U.S. 199, 223-224, 127 S. Ct. 910, 925-926, 166 L. Ed. 2d 798 (2007) (rejecting a "total exhaustion rule" and requiring dismissal only of those unexhausted "claims," not an entire "action").  Thus, Defendant's argument should be rejected.

## C.   Failed to Prove a Constitutional Violation

Defendants assert that they "acted reasonably in response to all information available to them" when Plaintiff was requesting protection.  ECF No. 79 at 26 (pointing out that Plaintiff neglected "to mention he was being targeted due to his sexual status").  At most, Defendants argue that

Plaintiff's allegations "rise to the level of mere negligence."  *Id.*  Further,

Defendants have shown that after repeated attempts to transfer Plaintiff for

his protection, he was eventually placed in protective management.  ECF

No. 79 at 25.  Defendants contend they "were not on notice of any danger

to [Plaintiff] as a result of his transfers" and did not have "any identifiable

red flags to indicate potential issues with different inmates."  *Id.*

    "[W]hen the State by the affirmative exercise of its power so restrains

an individual's liberty that it renders him unable to care for himself, and at

the same time fails to provide for his basic human needs--e.g., food,

clothing, shelter, medical care, and reasonable safety--it transgresses the

substantive limits on state action set by the Eighth Amendment. . . ."

Helling v. McKinney, 509 U.S. 25, 31-32, 113 S. Ct. 2475, 2480, 125 L. Ed.

2d 22 (1993) (quoting DeShaney v. Winnebago Cnty. Dept. of Soc.  Servs.,

489 U.S. 189, 199-200, 109 S. Ct. 998, 1005-1006, 103 L. Ed. 2d 249

(1989)).  The Eighth Amendment imposes a duty on prison officials "to

protect prisoners from violence at the hands of other prisoners."  Farmer v.

Brennan, 511 U.S. 825, 833, 114 S. Ct. 1970, 1976, 128 L. Ed. 2d 811

(1994) (quoted in Rodriguez v. Sec'y for Dep't of Corr., 508 F.3d 611, 616-

17 (11th Cir. 2007)); *see also* Zatler v. Wainwright, 802 F.2d 397, 400 (11th

Cir. 1986) ("[I]t is well settled that a prison inmate has a constitutional right to be protected ... from physical assault by other inmates.").  "Being violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offenses against society.'"  Farmer, 511 U.S. at 834, 114 S. Ct. at 1977 (quoting Rhodes v. Chapman, 452 U.S. 337, 347, 101 S. Ct. 2392, 2399, 69 L. Ed. 2d 59 (1981)).  Furthermore, "gratuitously allowing the beating or rape of one prisoner by another serves no 'legitimate penological objective'" and does not square with "evolving standards of decency."  511 U.S. at 833, 114 S. Ct. at 1977.

A prison official violates a prisoner's Eighth Amendment right to be protected against harm when two requirements are met.  Farmer, 511 U.S. at 834, 114 S. Ct. at 1977.  First, the prisoner must show that "he is incarcerated under conditions posing a substantial risk of serious harm" and, second, he must show that prison officials were deliberately indifferent to that risk - that is, that the prison official had a "sufficiently culpable state of mind."  Id. at 834, 114 S. Ct. at 1977; see also Rodriguez, 508 F.3d at 617.  An Eighth Amendment claim has both an objective and a subjective component.  Rodriguez, 508 F.3d at 617.

Objectively, the evidence is undisputed that Plaintiff faced a substantial risk of serious harm.  Plaintiff received threats from inmates, including threats at knife point, and endured numerous assaults.[7]  He also provided "creditable information" to prison officials which, according to Defendants' own evidence, revealed that Plaintiff's life was in danger. Defendants transferred Plaintiff at least ten times for protective reasons. That is sufficient to prove that Plaintiff faced an objectively serious and substantial risk of harm.

"With regard to the subjective component of the Eighth Amendment claim, the Court in Farmer held that the prison 'official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'"  511 U.S. at 837, 114 S.Ct. at 1979 (quoted in Rodriguez, 508 F.3d at 617).  It does not matter whether the risk to Plaintiff was "for reasons personal to him or because all prisoners in his situation face such a risk."  511 U.S. at 843, 114 S. Ct. at 1982.  It has been known for nearly thirty years that when a

---

[7] Plaintiff's sixth amended complaint, which is sworn under penalty of perjury, sufficiently presents evidence that Plaintiff was repeatedly stabbed in separate attacks, subjected to sexual assaults, made to perform oral sex, had personal property stolen and legal documents destroyed, beaten in the head with locks, and had a gang place a "hit" against him which continues.  ECF No. 68 at 9-17, 25.

Case No. 4:19cv126-WS-MAF

prisoner is labeled as a "snitch," the prisoner will "frequently [be] singled out for violent attack by other inmates."  511 U.S. at 843, 114 S. Ct. at 1982.  "Numerous courts - including the Eleventh Circuit - have recognized that . . . labeling the prisoner a 'snitch' or informant, has the potential for great harm" to the prisoner.  Jones v. St. Lawrence, No. 408-cv-095, 2008 WL 5142396, at *5 (S.D. Ga. Dec. 5, 2008) (citing Benefield v. McDowall, 241 F.3d 1267 (10th Cir. 2001) (concluding that correctional officer who "deliberately exposed [inmate] to harm at the hands of other inmates by labeling him a snitch stated an Eighth Amendment violation")); Northington v. Marin, 102 F.3d 1564, 1567 (10th Cir. 1996) (defendant officer testified "that if he spread a rumor in the jail that an inmate was a snitch, the inmate would probably be beaten by other inmates"); Irving v. Dormire, 519 F.3d 441, 451 (8th Cir. 2008) (holding "that a reasonable prison guard . . . would have known that to label [inmate] a snitch would violate his constitutional right to protection from harm"); Valandingham v. Bojorguez, 866 F.2d 1135, 1138 (9th Cir. 1989) (holding that allegation that guards labeled prisoner a "snitch" with the intent of having him killed by other inmates stated a claim under § 1983 for violation of inmate's "right to be protected from violence while in custody"); Harmon v. Berry, 728 F.2d 1407, 1408-09 (11th Cir.

1984) (finding prisoner's allegation "that prison officials were telling inmates that they were receiving harsher disciplinary penalties than they otherwise would be given because" prisoner had filed a lawsuit and was "a snitch" was sufficient to state a claim and warrant service of process); Gullatte v. Potts, 654 F.2d 1007, 1009 and 1014 (5th Cir. 1981) (inmate who agreed to testify at disciplinary hearings against other prisoners for raping his cell mate "became what is known in prison jargon as a 'snitch,'" and satisfying the subjective element requires determining what prison officials knew about the danger the prisoner faced).

Here, the undisputed evidence shows that prison officials considered Plaintiff to be at risk of harm from the inmate population in general because he could be viewed as a snitch or an informant. Plaintiff's assistance to prison authorities would almost certainly be to his own disadvantage. For that reason, Plaintiff was given a "resolve protection transfer" on multiple occasions. In this situation, prison officials were not deliberately indifferent to the risk of harm to Plaintiff because they took action to protect him from harm.

Plaintiff's argument in the complaint, however, is that the transfers were just a "sham" and did not fully protect him and he should have been

assigned to a protective management unit.  *See* ECF No. 68 at 17.  The

problem is that Plaintiff has not responded to Defendants' summary

judgment motion to provide evidence that the transfers were an

unreasonable response to the harm Plaintiff potentially faced.

"[P]rison officials who actually knew of a substantial risk to inmate

health or safety may be found free from liability if they responded

reasonably to the risk, even if the harm ultimately was not averted."  511 at

844, 114 S. Ct. at 1982-83 (quoted in Cox v. Nobles, 15 F.4th 1350, 1360

(11th Cir. 2021)).  On the other hand, "a prison official violates the Eighth

Amendment if he responds to a known risk 'in an objectively unreasonable

manner.'"  Cottone v. Jenne, 326 F.3d 1352, 1358 (11th Cir. 2003) (quoted

in Jackson v. Stevens, 694 F. Supp. 2d 1334, 1338 (M.D. Ga. 2010)).  "An

official responds to a known risk in an objectively unreasonable manner if

he knew of ways to reduce the harm but knowingly declined to act or if he

knew of ways to reduce the harm but recklessly declined to act."

Rodriguez, 508 F.3d at 620 (quoted in Cox, 15 F.4th at 1360).  "But a

prison official 'who act[s] reasonably cannot be found liable under the Cruel

and Unusual Punishments Clause.'"  Farmer, 511 U.S. at 837, 114 S.Ct.

1970 (quoted in <u>Cox</u>, 15 F.4th at 1360); *see also* <u>Rodriguez</u>, 508 F.3d at 620.

Here, the evidence reveals that officials responded reasonably. They did not ignore Plaintiff's requests for protection, but took steps to place him in administrative confinement while evaluating his need for protection. Officials ultimately agreed on at least ten occasions that Plaintiff was in danger at his current institution and determined that a transfer to another institution would resolve the problem without the need to place Plaintiff in protective management. Without more, it cannot be said that such a decision was unreasonable.

That is especially true when considering Plaintiff's allegations that he was in danger from gang members. ECF No. 68 at 17, 20. Plaintiff alleged that he was ultimately placed in a protective management unit,[8] but the unit is filled "with 80% gang members, the very people who [are] after Plaintiff." *Id.* at 22. He further alleged that "he will be targeted soon" and remains "in imminent danger of serious physical injury at Wakulla C.I. protective management unit" because the unit "is full of gang members who are not in

---

[8] Plaintiff was placed in protective management at Wakulla Correctional Institution, his current institution, on July 22, 2019. ECF No. 79-1 at 3.

need of true protection." *Id.* In light thereof, it is impossible to say that prison officials' decisions to transfer Plaintiff rather than place him in a protective management unit was unreasonable. Plaintiff himself has recognized that there is still a possibility of danger and harm to him even in that housing status. Yet, despite Plaintiff's recent requests to be released from the protective management unit, there has been no showing that Plaintiff has been injured or that officials cannot adequately protect him in that unit.

These are the very types of decisions which require affording to prison officials "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." Bell v. Wolfish, 441 U.S. 520, 547, 99 S. Ct. 1861, 1878, 60 L. Ed. 2d 447 (1979). Prison officials know far better how to protect the safety of inmates behind prison walls than the courts. In this instance, there is no evidence that officials did not respond reasonably to Plaintiff's need for protection. Thus, the motion for summary judgment should be granted.

## RECOMMENDATION

It is respectfully **RECOMMENDED** that Defendants' motion for summary judgment, ECF No. 79, be **GRANTED**, and that current Florida Department of Corrections' Secretary **Ricky D. Dixon** be automatically substituted for former Secretary **Mark S. Inch** in his individual capacity only.

**IN CHAMBERS** at Tallahassee, Florida, on February 14, 2022.


 S/    Martin A. Fitzpatrick
**MARTIN A. FITZPATRICK**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations.  Fed. R. Civ. P. 72(b)(2).  A copy of the objections shall be served upon all other parties.   A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Fed. R. Civ. P. 72(b)(2).  Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control.  If a party fails to object to the Magistrate Judge's findings or recommendations as to any particular claim or issue contained in this Report and Recommendation, that party waives the right to challenge on appeal the District Court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**

Case No. 4:19cv126-WS-MAF